CHARLES THRELKELD, Respondent, v. WABASH RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 15, 1896.

1. **Railroad:** CONTRIBUTORY NEGLIGENCE: DEGREE OF CARE NECESSARY IN CROSSING TRACK. Where a railroad has erected gates at a level crossing, as required by statute, the fact that the gates are open is an invitation to cross its track, and an assurance that the track can be safely crossed, and when its gate-keeper thus invites a person on the highway to cross its track, such person is not bound to exercise the same degree of care he would be required to exercise if no such invitation were given. Such invitation, however, does not excuse plaintiff from taking ordinary care for his own safety; but it lessens the degree of care to be observed in approaching such crossing, and limits it to that which would be proper where the appearance of the crossing indicated no train was near; and where plaintiff exercised such degree of care he was not guilty of contributory negligence.

2. ———: ———: COLLISION: EVIDENCE: JURY QUESTION. In such case, where there was evidence tending to show that plaintiff, the motorman of an electric railway, whose car was struck by defendant's train, looked and listened at the first point where his view was unobstructed, whether it was necessary for him to look again when he turned off the power in order to make a crossing within twenty or thirty feet of defendant's track, was a question for the jury, in view of the conceded facts, *supra*.

3. ———: ———: RULE OF COMPANY: EVIDENCE: JURY QUESTION. Whether plaintiff's stopping or failing to stop his car before making the crossing until his conductor could signal him to proceed, as required by a rule of his company offered in evidence, tended to show contributory negligence on plaintiff's part, was primarily a question of law, which was properly decided in favor of the admission of evidence tending to show that plaintiff did not stop his car before making such crossing, nor have his conductor signal him to proceed, the evidentiary force of which was a question for the jury, unaffected in law by such rule.

4. ———: PHOTOGRAPHIC VIEWS OF TRACK: EVIDENCE. Photographs of a portion of defendant's track some distance east of such crossing, offered in evidence, which were taken the year following the accident, and did not afford satisfactory proof of the views of defendant's track where plaintiff's car came out on its return trip, nor the approach to the crossing, was not such evidence as would warrant the court in reversing the judgment for its exclusion.

5. ———: CONSTRUCTION OF ENGINE WITH AUTOMATIC DEVICE FOR RING-
ING BELL: EVIDENCE.   The exclusion of evidence, offered by defend-
ant, tending to prove that the engine of defendant's train was con-
structed with an automatic device for ringing a bell, and that such
device was operating, and the bell rung for such distance before
reaching the crossing as to be within the hearing of plaintiff if he
had been listening, as he should have been, was prejudicial to defend-
ant, and reversible error.

*Appeal from the St. Louis City Circuit Court.*—HON.
THOMAS A. RUSSELL, Judge.

REVERSED AND REMANDED, all the judges concurring;
ROMBAUER, P. J., in the result.

*George S. Grover* for appellant.

The demurrer to the evidence should have been
sustained.   *Culbertson v. R'y*, Sup. Ct. Mo., June 30,
1896; 36 S. W. Rep. 834; *Lane v. Railroad*, Sup. Ct.
Mo., December 23, 1895; 33 S. W. Rep. 645.

The failure of defendant to lower the crossing gate,
although an invitation to cross, did not absolve the
plaintiff from the duty of exercising ordinary care.
Patt. on R'y Acc. Law, p. 164; Wood on R. R.
[Minor's Ed. 1894]; 2 *Id.* 1532, and cases cited;
*R'y v. Boyer*, 2 Am. and Eng. R. R. Cases, 172; *R'y
v. Franz*, 39 *Id.* 628; *Kelsay v. R'y*, 129 Mo. 362;
*Culbertson v. R'y*, 36 S. W. Rep. 834; *Lane v. R'y*,
33 *Id.* 645.

Even if defendant's servant was negligent in fail-
ing to lower the crossing gate at the proper time, yet
plaintiff's failure to exercise ordinary care in approach-
ing the crossing destroyed his right of recovery.   *Cor-
coran v. R'y*, 105 Mo. 399.

The court improperly excluded competent evidence
offered by defendant.   Cases cited *supra;* Whar. Ev.,
sec. 676, and cases cited; Best, Ev., p. 262, and cases
cited.

*Thomas P. Bashaw* and *Henry R. Hall* for respondent.

The second instruction, given at the request of plaintiff, which is against any recovery unless the jury find that plaintiff did not see or hear the approaching train, or could not have done so by the use of ordinary care on his part in time to avoid the collision, is unobjectionable.   This and the instructions given on behalf of defendant are all that defendant could ask, and more.   *Welsch v. R. R.,* 72 Mo. 451, 455; *Bersiegel v. R. R.,* 40 N. Y. 9.

BOND, J.—This action is for personal injuries sustained by plaintiff from a collision between an electric street car and the engine of defendant, at the intersection of the tracks of steam and street railroad companies.   There was a verdict and judgment for plaintiff for $750 from which defendant appealed.

It is insisted that the trial court erred in overruling a demurrer to the evidence.   This assignment necessitates an examination of the evidence relied on to sustain the recovery.

The evidence adduced for plaintiff tended to prove that the St. Louis & Suburban Railway Company operated a branch line running over Union avenue and entering Forest Park on the north side and extending a short distance in the park, when it described a loop and returned over said avenue to the main line.   This branch road was intersected by defendant's track at right angles near the entrance to the park; that at the point of intersection, defendant's line was provided with gates, which were let down or closed when its trains were about to pass; that plaintiff was the motorneer or driver of the street cars which were propelled

by electricity over the Union avenue branch of the St.
Louis & Suburban Railway Company; that while so
acting plaintiff took a street car into Forest Park on
October 4, 1894, and having made the loop started on
his return trip; that as he approached the crossing of
defendant's track he noticed the gates were raised or
open; that he turned off the power when he got
between twenty or thirty feet of the crossing; that he
did not hear the defendant's train or see it coming;
that he looked right and left and ahead before crossing
the intersection, saying, "When I got part of the way
over I saw the flash of a headlight from the train, and
that was the last I knew until I was unconscious in the
collision; when I saw the flash from the headlight I
was right over the rail on the Wabash track.   I turned
on the power then as quick as I could; I thought I
would go over.   I got over, but the car didn't.   The
Wabash train struck the car along about the center.
I was on the car when it struck.   The first thing I
remember I was on my feet going back towards the
car.   I don't know where I got up from.   I didn't
think at the time I was hurt.   I didn't feel it, and
when I got home I found I was considerably bruised
up;" that he had been employed as motorneer on this
line about eighteen months; and made the crossing in
question eight times an hour, running his car about
nine hours a day; that the turn of the loop was about
three hundred feet south of the crossing of the tracks;
that on his return trip he passed through the willow
trees in full foliage for a portion of this distance; that
after getting out of these he could see a distance of
"between two and three telegraph poles" or about one
hundred and fifty yards of defendant's track; that he
then looked to the right and left and straight ahead
and saw or heard nothing of defendant's train; there
were four passengers on his car when the accident hap-

pened, all of whom were more or less hurt; that defendant's train which struck the street car was a special freight and the collision occurred about a quarter to 7 o'clock P. M.

The issue as to contributory negligence must always be submitted to the jury, unless the only rational inference to be drawn from the undisputed facts excludes the idea that such care was observed by the plaintiff as a man of ordinary prudence would have exercised under the particular facts of the case. If the facts tending to prove contributory negligence are disputed, or if they are susceptible of diverse logical inferences,—the one tending to prove ordinary care, and the other tending to prove contributory negligence,—then it is the constitutional province of the jury to resolve the issue under proper instructions. The rule applicable to the particular facts shown in this record is aptly expressed by a late text writer in the following language: "Where a railway has in obedience to statutory requirements, erected gates at a level crossing, the fact that the gates are open is an invitation to cross and an assurance that the line can be safely crossed, and when a railway's gatekeeper, flagman, or train hand invites a traveler on the highway to cross the line the traveler is not bound to exercise the same degree of care which he would be expected to exercise if no such invitation were given; but such invitation by a servant of the railway will not excuse a failure by the injured person to exercise any care for his own safety." Patterson, Railway Accident Law, p. 164; 2 Wood on Railroads [Minor's Ed.], p. 1532. Under this rule it was the duty of the plaintiff to have exercised such care in approaching the intersection of the tracks as a person of common prudence similarly situated would be expected to take

CONTRIBUTORY negligence.

in making a crossing of tracks when he saw the guard gates lifted and inviting him to proceed. We do not hold that this invitation to cross would absolve the plaintiff from taking "any care for his own safety," but we are clearly of opinion that it lessened the degree of care to be observed by him in approaching an unguarded crossing, and limited it to that which would be proper when the appearance of the crossing indicated that no railroad train was near. Taking this as a premise we are not prepared to say that plaintiff under any rational inference arising upon the foregoing testimony was guilty of contributory negligence in attempting the crossing in question. His evidence, if believed, tended to prove that upon emerging from the willow trees, a point about ninety-seven feet from the crossing, he looked to the right and to the left and in front of him; that he never saw any appearance nor heard any noise of an approaching train, until his car was in the middle of defendant's track. It is true he did not stop his street car before crossing the track and wait for a signal from his conductor. As against this failure it must be remembered that the car could not be completely stopped without losing the momentum necessary to make the crossing of tracks, the electrical energy being suspended at the intersection of tracks; that when he got about thirty feet from the crossing he turned off the power, seeing or hearing nothing of the train, as he says, knowing that the watchman at the guard gates was on duty, and observing them to be wide open inviting his approach. It must also be borne in mind that the particular train which collided with the street car was not one of defendant's regular trains passing at the usual time, of which plaintiff inferably had notice from the frequency of the crossing made by him and his long employment as motorneer, but that the train in question was a special one

running at an unusual time. Taking all these facts and circumstances together, it can not be said, as a matter of law, that they excluded every other inference except that of a reckless disregard of his own safety when plaintiff crossed the track of defendant. There was no error, therefore, in the submission of the issue as to contributory negligence to the jury. The cases cited by appellant do not militate against this conclusion. In *Culberson v. Railroad*, 36 S. W. Rep. 84, it appeared that plaintiff's husband was killed by a collision between a cable car and a buggy driven by him, which occurred after he had driven across an intersection of said tracks, upon the signal as he supposed, of a watchman while an approaching car was in plain view, to avoid a collision with which it was only necessary for him to have turned his buggy to the left instead of to the right. By taking the latter course his vehicle was struck by the approaching car on account of want of space between the car track and the sidewalk to permit a safe passage. The supreme court held that the plaintiff's decedent was guilty of contributory negligence, as a matter of law, basing its conclusion upon his recklessness in choosing a dangerous route, when a safe one was open to him, with full time and opportunity on his part to have adopted the latter. It is evident that the facts in that case are essentially different from those in the one under review. If the testimony adduced by plaintiff in the present case is to be believed he, although exercising ordinary care, knew nothing of his peril until he saw the flash of the headlight as his car was crossing the defendant's track, when nothing remained to be done but to apply all the power possible in getting over the crossing. In the case cited the decedent when conscious of his peril and beholding an approaching street

car, deliberately chose a dangerous instead of a safe mode of escape.

Neither is there any want of harmony in the views announced by us and those expressed in the case of *Kelsay v. Railroad*, 129 Mo. 362. That was an action for injuries sustained by the plaintiff by the collision of an engine with a buggy driven by her while she was attempting to cross the railway track. The undisputed physical facts disclosed that for a space of twenty-five feet before reaching the crossing there was a plain and unobstructed view of defendant's track for such a distance; that if plaintiff had looked and listened she must have known the danger of attempting the crossing in question; she did not stop until she was within four or five feet of the railway track, and when she stopped at that time she looked only in one direction, the car came from the other direction,—the collision took place and the injuries resulted. Under such a state of facts there could be no question that she was guilty of contributory negligence barring a recovery. In disposing of that question the supreme court adopted the rule formulated in *Hayden v. Railroad*, 124 Mo. *loc. cit.* 573, to wit: "It will thus be seen that it was a physical impossibility for the deceased to have failed to see the approaching train, if he had looked in that direction, as it was his duty to do, while yet in a place of safety, and before entering upon the line of danger." In the case under consideration the supreme court determined that it was the duty of the plaintiff to have looked and listened when she arrived within twenty-five feet of the crossing in question, where the undisputed evidence disclosed a clear view of enough of the track so presented to have apprised her of any danger from approaching trains.

In the case before us, as has been shown, there was evidence tending to show that the plaintiff looked and

listened at the first point where his view was unob-
structed. Whether it was necessary for him to look
again when he turned off the power so as
EVIDENCE: jury to make a crossing within twenty or thirty
question.
feet of defendant's track, was a question for
the jury, in view of the conceded fact that defendant's
watchman was on duty and maintained the gates lifted
and open, signifying the track was clear, and inviting
plaintiff to cross.

The next error relates to the ruling of the court in
excluding evidence of a rule adopted by plaintiff's em-
ployer requiring its motorneers to stop their cars before
making the crossing in question until a conductor could
signal them to advance. Whether the
RULE of company: doing or not doing of such an act tended
evidence: jury
question. to show contributory negligence on the
part of the plaintiff, was primarily a ques-
tion of law. This was rightfully determined in favor of
the admission of evidence tending to show that the
plaintiff did not stop his car before making the cross-
ing, nor have his conductor advance and signal him to
proceed. The evidentiary force of these facts was, un-
der the showing made in this record, a question for the
jury. Their evidentiary force was unaffected in law by
reason of the fact of the adoption by plaintiff's employ-
ers of a rule requiring their conductors to do such acts
before making the crossing in question. That rule was
doubtless a wise precaution on the part of plaintiff's
employers to secure the safety of its passengers, but it
could not be held to be a legal regulation of plaintiff's
conduct as to this defendant. Whether that conduct
was negligent, depended upon the characterizing facts,
and not upon the existence or nonexistence of rules of
discipline governing plaintiff's relations to his own em-
ployers.

The third point relates to the exclusion of two pho-

tographs of a portion of defendant's track, some distance east of the crossing. These pictures do not exhibit a view of the crossing, nor the line PHOTOGRAPHIC views of track: evidence. of the electric railway over which plaintiff's car passed. They were taken in December of the year following the accident. They do not afford satisfactory proof that they were true representations of the visibility of defendant's track from the point where plaintiff's car came out of the willows on its return trip, nor the approach to the crossing. Hence, we can not put the court in the wrong for their exclusion. Correct pictures of the places and physical environments of accidents are helpful aids to the jury in comprehending the causes of such accidents, and when shown to be correct and true representations of the situation at the time of the happening of the accident, are properly received in evidence. The nature of the pictures in question, the unsatisfactory evidence as to the sameness of conditions at the time they were taken and at the time of the accident, do not warrant us in reversing the judgment for their exclusion.

The last ground relied on for a reversal is that the court excluded the evidence tending to prove that the engine was constructed with an automatic device for ringing a bell, and that such device was operating and the bell being rung for such a distance AUTOMATIC device for ringing bell: evidence. before reaching the crossing as to be within the hearing of plaintiff, if he had been listening for noises as he should have done before attempting the crossing. Unquestionably such a device would greatly increase the noise of an approaching train. Its relevancy under the plea of contributory negligence in failing to listen, is clear. The rejection of this evidence, when offered by defendant, was error prejudicial to it and necessitates the reversal

of this judgment and the remanding of the cause. It is so ordered. All the judges concur. Judge ROM-BAUER in the result.